**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| THOMAS GAST, individually and | § | |
| CHRISTINA VILLAREAL, individually | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-05-427 |
| | § | |
| OFFICER RAYMOND SINGLETON, et al. | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING CITY OF LEAGUE CITY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

This case arises out of alleged misconduct by officers of the League City Police Department.

Now before the Court is Defendant City of League City's ("City") Motion to Dismiss for Failure to

State a Claim.  For the reasons stated below, the City's Motion to Dismiss for Failure to State a

Claim is **GRANTED**.

## I.  Background

Plaintiffs Thomas Gast ("Gast") and Christina Villareal ("Villareal") (collectively,

"Plaintiffs") bring this action under 42 U.S.C. § 1983 for alleged violations of the Fourth

Amendment, and under state common law theories based on false arrest and trespass.  Plaintiffs

claim that the City's police officers subjected them to an unconstitutional search and seizure, and

used excessive force against them.

-1-

On July 27, 2003, League City Police Officer Tamara Spencer ("Spencer") was dispatched to 3608 Blue Wing, Plaintiffs' residence, to investigate an accident.[1]  As Spencer was investigating the accident, she noticed two males walking nearby.  She detained them.  A search of the two gentlemen resulted in the discovery of alcohol and marijuana, and Spencer placed them into custody.

At some point, Spencer requested backup, and League City Police Officers Brian Doolan ("Doolan"), Raymond Singleton ("Singleton"), and Jeffrey Goldman ("Goldman") arrived at the scene.  Doolan and Singleton heard voices in the backyard of Plaintiffs' residence and proceeded to enter the backyard through a wooden privacy fence gate.  They did not attempt to enter through the front door.  Once in the backyard, they noticed two beer cans on the patio table.  Based on this observation, four individuals in the backyard were detained and questioned.  Three of them were arrested for "minor in consumption" of alcohol, but the fourth individual was released because she was over 21 years old.

During the detention and questioning of the individuals in the backyard by Doolan and Singleton, Goldman entered the backyard.  From there he claims to have seen minors in the house in possession of alcohol.  The officers sought consent to enter the house from one of the arrestees from the backyard, who was a resident of the house.  He would not give them consent to enter.  In addition, no one from inside the house would give the officers consent to enter.  While the officers were trying to get consent, one female occupant from inside the house was heard singing "too bad, so sad, no warrant."[2]

---

[1] Since this is a Motion to Dismiss, the Court must consider the facts as they have been presented by the Plaintiffs.  Accordingly, the Court has laid out the facts as alleged in Plaintiffs' Complaint, but makes no judgment as to their accuracy.

[2] Plaintiffs did not include in their factual allegations the tune of this song, but did state that it made the officers "angry" and allegedly caused them to have vehicles removed from the driveway of Plaintiffs' residence.

After approximately another 30 minutes, a parent of one of the occupants of the house arrived to pick up her daughter.  The police used this woman to enter the house.  They suggested that she get the occupants to open the door for her, and when they did, Singleton, Goldman, and Doolan rushed into the house and seized the occupants.  Eventually, Plaintiffs arrived to find approximately 20 people detained by police officers inside their home.  After they were informed of the circumstances surrounding the presence of the officers, Plaintiffs requested that the officers leave.  The officers refused.

At some point, one of the occupants of the house suffered a busted lip, and bled, leaving blood in Plaintiffs' kitchen.  When Gast noticed the blood he called 911, seeking some type of intervention.  Sergeant Samuel Brown ("Brown") then arrived and entered the house, and asked who had called 911.  Gast was then arrested, "taken to the wall and the floor," beaten unconscious, and pepper sprayed, allegedly on Brown's orders.  Villareal suffered the same or similar treatment in response to her protests of the officers' treatment of Gast.  Plaintiffs were charged with resisting arrest and interfering with the duties of a public servant.

Plaintiffs originally filed suit on July 11, 2005, in the 212th State Judicial District Court of Galveston County, Texas.  On August 4, 2005, all Defendants removed Plaintiffs' claims to this Court.  On August 16, 2005, the City filed this Motion to Dismiss, and on September 19, 2005, Plaintiffs filed their timely response.  On November 23, 2005, Plaintiffs filed their First Amended Complaint.

## II.  Motion to Dismiss Standard

A party is entitled to dismissal under Fed. R. Civ. P. 12(b)(6) when an opposing party fails to state a claim upon which relief may be granted.  When considering a motion to dismiss for failure

to state a claim, the Court accepts as true all well-pleaded allegations in the complaint and views them in the light most favorable to the plaintiff. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (noting that a court must construe the complaint liberally in favor of the plaintiff); *see also Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993). A motion to dismiss should be granted only when it appears without a doubt that a plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002); *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). There are no heightened pleading requirements for § 1983 claims against municipalities. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160, 1163, 122 L. Ed. 2d 517 (1993). Section 1983 claims against municipalities are governed by Fed. R. Civ. P. 8(a)(2), and a plaintiff need only make a "short and plain statement of the claim showing the pleader is entitled to relief." *See also Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 634–35 (S.D. Tex. 2001) (quoting Fed. R. Civ. P. 8(a)(2)). "A motion to dismiss under Rule 12(b)(6) is viewed with disfavor and is rarely granted." *Collins*, 224 F.3d at 498.

Since the City filed its Motion to Dismiss, Plaintiffs have filed their First Amended Complaint. The First Amended Complaint is the live Complaint, and it has superseded Plaintiff's Original Petition filed in state court, and subsequently removed to this Court. When a complaint has been amended after the filing of a motion to dismiss, the Court considers the differences between the original complaint and the amended version and to the extent that the defects raised in the motion to dismiss remain in the amended complaint, the Court should apply the motion to dismiss to the

-4-

amended pleading. *See Davenport*, 147 F. Supp. 2d at 635 (citing 6 CHARLES ALAN WRIGHT, ARTHUR R. MILER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1476 (1990)). Therefore, the Court will examine the claims articulated in Plaintiffs' First Amended Complaint in light of the defects in their Original Petition raised by the City's Motion to Dismiss.

### III.  Analysis

The City seeks dismissal of Plaintiffs' § 1983 claims and state common law claims against it, as well as Plaintiffs' § 1983 claims against the League City Police Department and against the City's officers in their official capacity.  In their Response, Plaintiffs make two arguments: (1) that they have given the City adequate notice of their claims against it, and (2) that their § 1983 claim against the City should not be dismissed under a theory of *res ipsa loquitor*.

> *A.  Plaintiffs' State Common Law Claims Against the City, Claims Against the League City Police Department, and Claims Against the Officers in Their Official Capacities*

In their First Amended Complaint, Plaintiffs dropped their state common law claims against the City, dropped their claims against the League City Police Department, and dropped their claims against the City's officers in their official capacities.  Therefore, the City's Motion to Dismiss with respect to these abandoned claims is **GRANTED**, and each and all of these claims are **DISMISSED WITH PREJUDICE**.  The only claims remaining in the First Amended Complaint are Plaintiffs' § 1983 claims against the officers in their individual capacity, Plaintiffs' state tort law claims based on common law for false arrest and trespass against the officers in their individual capacity, and Plaintiffs' claims against the City under § 1983.

> *B.  Plaintiffs' § 1983 Claims Against the City*

The only cause of action that remains against the City is the § 1983 claim for violations of Plaintiffs' Fourth Amendment rights. Specifically, Plaintiffs allege that in light of the number of the City's police officers involved in the alleged constitutional violations and the number of alleged constitutional violations that occurred, that the City failed to train and supervise its police officers. Plaintiffs claim that this failure to train and supervise constituted a policy and is evidence of a custom that was a "moving force" behind the federal violations that they allegedly suffered. Plaintiffs offer no other factual allegations in support of their claim.

In suits against a municipality, "a plaintiff must demonstrate that a county 'policy' was the 'moving force' behind the constitutional violation." *In re Foust*, 310 F.3d 849, 861 (5th Cir. 2002) (quoting *Brown v. Bryan County, Okla.*, 219 F.3d 450, 457 (5th Cir. 2000)). A city is not liable for the intentional torts of its employees under § 1983 unless an official policy, custom or practice led to those torts. *See Monnell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.... [A] municipality cannot be held liable *solely* because it employs a tortfeasor...."). Municipalities may not be held liable under either a theory of respondeat superior or vicarious liability. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 818, 105 S. Ct. 2427, 2433, 85 L. Ed. 2d 791 (1985); *Monnell*, 436 U.S. at 691, 98 S. Ct. at 2036.

To prove a violative policy or practice, a plaintiff must show "(1) the local government or official promulgated a policy; (2) the decision displayed 'deliberate indifference' and proved the government's culpability; and (3) the policy decision lead to the particular injury." *In re Foust*, 310 F.3d at 861. The Supreme Court has said that "[l]ocating a 'policy' ensures that a municipality is

-6-

held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403–04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) (citing *Monell*, 436 U.S. at 694, 98 S. Ct. at 2037–38).

Plaintiffs' claim against the City is one of inadequate training and supervision. A municipality may incur § 1983 liability for inadequacy of police training if a plaintiff can establish that the municipality's policy of training or failure to supervise caused the unconstitutional act complained of. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 379, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 412 (1989); *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996); *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992). To hold a municipality liable for inadequate training, a plaintiff must prove that "(1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury." *Baker*, 75 F.3d at 200 (citing *City of Canton*, 489 U.S. at 385–87, 109 S. Ct. at 1205–07; *Benavides*, 955 F.2d at 972). A plaintiff must show more than that "an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct [because] ... [s]uch a claim could be made about almost any encounter resulting in injury...." *City of Canton*, 489 U.S. at 391, 109 S. Ct. at 1206.

To hold a municipality liable for failing to supervise its police officer, a plaintiff must prove that the City supervised its employees in "a manner that manifests deliberate indifference to the constitutional rights of citizens." *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1998). A plaintiff must show that: (1) the supervisor failed to supervise; (2) a causal link exists

-7-

between the failure to supervise and the violation of rights; and (3) failure to supervise amounts to deliberate indifference. *See Smith v. Bretnoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998).

The Court notes that actually establishing liability under § 1983 for failure to train or supervise the police officers in the City's employ is a difficult task. However, Plaintiffs are not yet at the summary judgment or trial stage, and the only issue is whether they have stated a claim which survives the City's Motion to Dismiss. Plaintiffs do not need to prove a county custom or policy, but they must allege facts which, if true, state a claim for which relief can be granted.

The City moves to dismiss Plaintiffs' § 1983 claim against it because Plaintiffs failed to allege facts showing (1) the involvement of a City policymaker in any unlawful conduct; (2) that the City implemented any unconstitutional policy or custom which caused a deprivation of either Plaintiff's constitutional rights; and (3) that any unconstitutional policy was the "moving force" behind the deprivation of either Plaintiff's constitutional rights. More precisely, the City argues that Plaintiffs failed to allege facts showing: (1) a policy or custom of constitutionally inadequate training or supervision of its police officers; (2) that the City was not in compliance with state-mandated training requirements; (3) that the City acted with deliberate indifference to a known risk; or (4) that the incident complained of was anything more than an isolated incident.

In this case, Plaintiffs allege no facts to support their claim of inadequate training and supervision. First, Plaintiffs allege no facts, direct or circumstantial, indicating that the City's training procedures were constitutionally inadequate, that they did not comply with state-mandated training, or that the City failed to supervise its officers. Second, Plaintiffs allege no facts showing that the City's policymaker was deliberately indifferent in adopting or failing to adopt a particular training policy, or supervised its officers in a manner that shows deliberate indifference to the

-8-

constitutional rights of citizens. Third, Plaintiffs have not alleged any facts showing how inadequate training or supervision directly caused their injuries. A mistake by a police officer does not establish the inadequacy of a city's training program. *See City of Canton*, 489 U.S. at 391, 109 S. Ct. at 1206. Fourth, Plaintiffs failed to identify a policymaker. Fifth, Plaintiffs failed to identify a policy or custom that was the "moving force" behind their alleged constitutional violations. Sixth, there are no alleged facts supporting a link or causal connection between the actions of the City's police officers at Plaintiffs' residence and any official custom or policy of the City itself.

Plaintiff has failed to allege any facts which demonstrate a deficiency in the City's training or supervision of its police officers. Instead, it asks this Court to find that the *res ipsa loquitur* doctrine, typically applied in personal injury claims of ambiguous origin, can serve as a basis for municipal liability under § 1983. Neither the Supreme Court nor the Fifth Circuit has ever held that *res ipsa loquitur* may serve as a basis for municipal liability under § 1983, and this Court declines to do so. Plaintiffs must allege facts, which, if true, might support a theory of municipal liability and they have completely failed to do so. Therefore, Defendant City of League City's Motion to Dismiss this claim is **GRANTED**. If discovery should produce additional facts supporting Plaintiffs' claim, they may refile it. But, the court cautions that this should only be done if factually justified. Therefore, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' 42 U.S.C. § 1983 claim against the City.

### IV. Conclusions

For the reasons stated above, the City's Motion to Dismiss for Failure to State a Claim is **GRANTED**, and the Plaintiffs' common law claims against the City, all claims against the League City Police Department, and all claims against the Defendant officers in their official capacity are

-9-

each and all **DISMISSED WITH PREJUDICE**.  Plaintiffs 42 U.S.C. § 1983 claims against the City are **DISMISSED WITHOUT PREJUDICE**.  The Court will enter a Final Judgment in due course, regarding all dismissed claims.  Each  Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 9th day of December, 2005, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge